IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JONATHAN JENNINGS, M.D., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO.: 2:15-CV-2781-DCN-BM |
| | ) | |
| vs. | ) | **C O M P L A I N T** |
| | ) | |
| Roper St. Francis Physicians Network, | ) | |
| Roper St. Francis Physician Partners, | ) | |
| CareAlliance Health Services d/b/a Roper | ) | |
| St. Francis HealthCare, | ) | |
| Robert Oliverio, M.D., Gregory Robinson, | ) | |
| James Bowron, Crystal Glover, | ) | |
| Gretchen Morin, and Patricia Bivins, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Comes now the Plaintiff, Jonathan Jennings, M.D., by and through undersigned counsel, alleges and says unto this Honorable Court the following:

### Introduction

1.  This is an action seeking declaratory judgment, equitable relief, compensatory damages, costs and attorney's fees for discrimination based on race in violation of the 1991 Civil Rights Act; 42 USCA, 1981, as amended; 42 USCA 1985; civil conspiracy; breach of contract; and breach of implied covenant of good faith and fair dealings.

### Jurisdiction

2.  Jurisdiction of this Court is invoked pursuant to 28 USC 1343, *et seq*. and 42 USCA 2000 *et seq*. Nothing embodied in the Employment Agreement, hereinafter referred to, come within the statutory language of 9 USC 1 or 9 USC 2 in that the said

Agreement does not involve any maritime transactions or a contract evidencing a transaction related to commerce to be settled by arbitration.

3. Compensatory and punitive damages are sought pursuant to the 1991 Civil Rights Act, *et seq*. as amended, 42 USCA 1981, et seq., as amended and 42 USCA 1985, as amended.

4. Furthermore, the Plaintiff seeks attorney's fees for the bringing of this action pursuant to the 1976 Civil Rights Attorney's Fees Act as well as other appropriate federal or state statutes.

5. The venue of this action lies in the Charleston Division of the South Carolina District Court because the Plaintiff currently resides in the County of Charleston, State of South Carolina. Further, the Defendants are corporations, individuals or partnerships existing and organized under the laws of the State of South Carolina or with its principal place of business located in the County of Charleston, State of South Carolina.

**Parties**

6. The Plaintiff, a 2008 graduate of the University of North Carolina Medical School at Chapel Hill, North Carolina, is a medical doctor who is licensed and authorized to practice Internal Medicine and Pediatrics without restrictions, in the State of South Carolina.

7. Further, Plaintiff is one of only less than seven (7) African American physicians employed by the Defendants' organization and the only African American physician employed at the Roper St. Francis, Mt. Pleasant facility. There are

approximately sixty (60) physicians employed by the Defendants at the Mt. Pleasant location.

## Facts

8. The Plaintiff was initially employed by the Defendants' corporation on May 30, 2013. The Employment Agreement that the Plaintiff executed with the Defendant, stated, in part, *"Network shall bear all applicable, reasonable expenses involved in maintaining all services that are ancillary to the Clinical Services rendered hereunder by Physician. Network shall provide all professional, non-professional, clerical, paramedical and nursing personnel reasonable necessary for the proper functioning of all Clinical Services rendered hereunder by Physician."*

9. Further, the Agreement stated, in part, *"Network shall provide reasonable and necessary amount of office space necessary for the performance of Physician's duties and the rendering of professional Clinical Services contemplated herein, and shall provide and keep in good repair all equipment and supplies necessary for the proper functioning of all Clinical Services."*

10. The Plaintiff on numerous occasions was not accorded adequate space and/or any space in which to render professional services to his patients. For example, while all the Caucasian physicians had office space and/or pods in which to treat and/or engage in adjacent duties in regards to rendering medical services to his patients, Plaintiff was made to stand up at a counter to repeatedly render these additional services while white doctors, who were similarly situated as the Plaintiff, did not have to suffer that indignity. For example, *intra alia,* Plaintiff had to stand up at a counter to do chart notes while white doctors were accorded pods and offices in which to do chart notes.

11. On many other occasions, the Plaintiff was not accorded a room in which to see or treat patients. Additionally, on days when white doctors were not seeing patients in their pods or room, the Plaintiff was not allowed to use those rooms or pods while other white doctors were.

12. The Defendant, Robert Oliverio, M.D., as well as other Defendants hereinabove named, engaged in a course of conduct that caused the Plaintiff's patients not to be call back for appointments while white doctors' patients were always called to be reminded of their appointments.

13. Plaintiff further believes and is informed that the Defendants gave instructions that Plaintiff's patients should be put on the lowest priority in regards to call back for appointments or follow-up visits. No such instructions were issued as it relates to white doctors.

14. Plaintiff was never allowed to participate in the hiring process of his non-clinical Practice Manager while a white doctor was allowed to participate in the interview process for the said Practice Manager as well as having a substantial input and determination in reference to who would be hired as their Practice Manager.

15. Additionally, Plaintiff was made to practice medicine for a period of approximately three (3) months without a Practice Manager while white doctors were never allowed to practice without a Practice Manager for a period in excess of two weeks.

16. Furthermore, Plaintiff asserts that some of his established patients' medical records were routinely switched to reflect other white physicians as the primary care provider without Plaintiff or the patient's knowledge or consent. Conversely, Plaintiff asserts that white doctors' patients' medical records are very rarely, if ever,

switched to reflect other doctors as the primary health care provider without their consent or knowledge.

17. Solely because of his race, Plaintiff was not made aware of or given an opportunity to become certified as a provider for Patient-Centered Medical Home while all white primary care providers were included and certified for the same. There are twenty (20) primary care providers in the Defendant's organization. Nineteen (19), all whom are Caucasians, were certified. The Plaintiff is the only black primary health care provider who was not given the opportunity to become certified.

18. The Plaintiff complained repeatedly, at one time or another, to the Defendants, Robert Oliverio, M.D., Gregory Robinson, James Bowron, Crystal Glover, Gretchen Morin, and Patricia Bivins, about the disparate treatment that he was receiving as oppose to the Caucasian doctors.

19. The more the Plaintiff complained about being treated differently because of his race, the more severe the disparate treatment became towards the Plaintiff at the hands of the Defendants as hereinabove mentioned.

20. Plaintiff asserts that the Defendants, individually, officially, and in concert with each other, conspired to deprive him of the space in which to practice his profession, hire clinical assistants and practice managers, thereby causing a decrease in the Plaintiff's practice, directing that call-backs to Plaintiff's patients be given the lowest priority, as well as engaging in other discriminatory acts against the Plaintiff, all because of his race, and in so doing, caused the latter special damages.

21. Plaintiff further asserts that white doctors similarly situated, were treated significantly more favorable than he was, inasmuch as call back to white doctors' patients were given substantial priority over the Plaintiff.

22. Plaintiff further alleges that the Defendants' conduct were designed to deprive him of the ability to earn as much, if not more, money in his practice than white doctors who were similarly situated.

23. The above conduct on the part of the Defendants caused the Plaintiff extreme hardship in fulfilling his obligations and duties under the contract, said conduct engaged in by the Defendants all because of the Plaintiff's race thereby interfering with the Plaintiff's performance under the said contract.

24. Notwithstanding the above, the Plaintiff was threatened with being in a material breach of the contract on at least two (2) occasions.

### FOR A FIRST CAUSE OF ACTION
### (Race Discrimination)
### (42 U.S. Code § 1981)

25. The Plaintiff realleges each and every allegation set forth hereinabove as if repeated verbatim.

26. The Plaintiff alleges that the Defendants' conduct towards the Plaintiff was engaged in by the Defendants solely because of the Plaintiff's race in violation of 42 U.S. Code §1981.

27. Plaintiff further alleges that he was retaliated against to the extent that the Plaintiff continuously complained to the Defendants because he was in opposition of the discriminatory practices of the Defendants as it relates to the Plaintiff and/or other African American employees of the Defendants' corporation.

28. As a result of the unlawful violation and/or race discrimination by the Defendants, the Plaintiff suffered damages, both punitive and actual, in an amount to be proven at trial.

### FOR A SECOND CAUSE OF ACTION
### (Retaliation)
### (42 US Code §1981)

29. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

30. The Plaintiff was retaliated against by the Defendants for engaging in a protected activity and that each time the Plaintiff complained, either verbally or in writing, the retaliation continued and became more severe by the Defendants.

31. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

### FOR A THIRD CAUSE OF ACTION
### (Violation of 42 U.S. Code §1985)

32. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

33. Plaintiff asserts that because his rights accorded to him under 42 U.S. Code §1985 were violated as a result and because of his race all in violation of the hereinabove mentioned statute.

34. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

## FOR A FOURTH CAUSE OF ACTION
### (Breach of Contract)

35. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

36. The Plaintiff asserts that the Defendants materially breached the contract between the Plaintiff and Defendants.

37. As a result thereof, the Plaintiff suffered damages, both punitive and actual, if applicable, in an amount to be proven at trial.

## FOR A FIFTH CAUSE OF ACTION
### (Breach of Implied Covenant of Good Faith and Fair Dealing)

38. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

39. The Plaintiff asserts that the Defendants knew that an implied covenant of good faith and fair dealing accompanied the contract entered into by the Plaintiff and the Defendants.

40. The Plaintiff relied on the Defendants' representation made to the Plaintiff in the Employment Agreement.

41. Plaintiff further asserts that he would not have signed the Agreement had the representations by the Defendants not been made as set out in the Agreement.

42. The Defendants' conduct breached the Agreement and in so doing caused the Plaintiff damages in an amount to be proven at trial.

## FOR A SIXTH CAUSE OF ACTION
### (Civil Conspiracy)

43. The Plaintiff realleges and reincorporates each and every allegation hereinabove set forth.

44. The Plaintiff asserts that the Defendants in concert with each other and among themselves, conspired to engage in a course of conduct and a common design to damage Plaintiff's practice, thereby causing the Plaintiff special damages, both punitive and actual, in an amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for damages as follows:

Compensatory damages, loss wages and benefits; damages and consequential damages for breach of contract and breach of implied covenant of good faith and fair dealing; damages accorded under 42 USCA 1981, as amended; 42 USCA 1985, as amended; and the 1991 Civil Rights Act, as amended;

Punitive damages in an amount to be proven at trial;

Attorney's fees and costs for this suit pursuant to the 1976 Civil Rights Attorney's Fees Act;

Prejudgment interest on all claims;

Injunctive relief;

And for such other relief as this Court may deem just, equitable and proper.

BY:   s/Edward M. Brown, Esquire
EDWARD M. BROWN, ESQUIRE
Attorney for the Plaintiff
Federal I. D. No. 1510
P. O. Box 20261
Charleston, SC  29413
(843) 559-9224
(843) 559-9226 (Fax)

Charleston, South Carolina

Dated:  July 14, 2015